UNITED STATES of America, Plaintiff–Appellee,

v.

Travelle POINTER, Defendant–Appellant.

No. 02–5883.

United States Court of Appeals, Sixth Circuit.

March 19, 2004.

Van S. Vincent, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Travelle Pointer, Federal Correctional Institute, Manchester, KY, pro se.

Before KENNEDY, ROGERS, and COOK, Circuit Judges.

## ORDER

This is a direct appeal from a criminal judgment and commitment order. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2001, Travelle Pointer was indicted on drug and firearm charges. Pointer was eventually found guilty on his plea to possession with intent to distribute 168 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), and to possession with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Pointer to a 151–month term of imprisonment and a five-year period of supervised release. This appeal followed.

Pointer set forth ten separately denominated issues for appellate review. The central theme, however, is that the district court erred in denying Pointer's motions to suppress. This court employs a mixed standard in reviewing a decision to deny a motion to suppress. Findings of fact will be upheld unless clearly erroneous; the court's ultimate determination as to the reasonableness of the search is reviewed de novo. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir.2003). The evidence will be considered in the light most favorable to the government, *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993), and a district court's credibility determinations are entitled to great deference. *United States v. Navarro–Camacho*, 186 F.3d 701, 705 (6th Cir.1999). An examination of the record and law using these standards of review supports the district court's judgment on appeal.

The facts, taken in the light most favorable to the government, reflect the following. On April 4, 2000, Illinois State Police officers effected a traffic stop of two automobiles. One of the automobiles was being driven by defendant Pointer, a convicted felon and resident of Nashville, Tennessee. This stop resulted in Pointer being indicted and convicted in Illinois state court for the unlawful possession of a firearm by a felon. The Illinois arrest also caused law enforcement agents to

contact Officer Donegan of the Nashville Metropolitan Police Department. Officer Donegan thereafter obtained a warrant to search Pointer's residence at 328 Queen Avenue. The search of the Queen Avenue residence yielded a sum of cash and a safe giving off the strong odor of cocaine. There was no evidence relating to the Cherry Creek Apartments, a Nashville apartment complex located at 2131 Crystal Spring Lane. The search warrant for Pointer's Queen Avenue residence was subsequently invalidated.

In January 2001, Officer Donegan and other officers began surveillance of individuals coming and going from Pointer's Queen Avenue apartment. The officers learned, as a result of this surveillance, that the electric service to the apartment was taken out of Pointer's name and placed into Shari Thomas's name. The officer made an inquiry and discovered that Ms. Thomas, the mother of an infant, also had electric service in her name at another Nashville apartment in the Cherry Creek Apartments located at 2131 Crystal Spring Lane. Donegan asked for, and received, the access code to the front entrance of the gated Cherry Creek property from the manager. In March 2001, Donegan and other police officers initiated periodic surveillance of Thomas's apartment while on Cherry Creek property. This surveillance resulted in the discovery that Pointer's car was frequently parked outside Thomas's apartment. In addition, the officers were informed that Thomas lived with an individual named Michael Rucker who listed the name of Valerie Pointer as a personal reference.

On May 8, 2001, one of the officers conducting the Cherry Creek surveillance saw Thomas and a person fitting the physical description of defendant Pointer drive away in Thomas's automobile. Ms. Thomas's passenger was, in fact, Pointer, who tossed a trash bag in a community dumpster located on the Cherry Creek property. The officers immediately secured the dumpster and examined the contents of the bag. The trash bag contained used diapers, an envelope addressed to Thomas's apartment, several plastic bags containing trace amounts of cocaine, and a pair of white plastic gloves. Officer Donegan set out this information in an affidavit attached to a request for a warrant to search Thomas's apartment. Officer Donegan obtained the warrant and found, in the apartment, cocaine and crack cocaine, a bullet-proof vest, a firearm and ammunition, a set of scales, measuring cups, and several boxes of plastic bags.

Pointer was thereafter indicted for possession of cocaine, of cocaine base and of a firearm in furtherance of drug trafficking crimes. He moved to suppress the evidence against him seized from Thomas's Cherry Creek apartment, as well as the information gathered from the search of the Queen Avenue apartment and the Illinois traffic stop. The government responded and the matter proceeded to an evidentiary hearing.

The position taken by counsel for Pointer was straightforward: The evidence seized from Thomas's Cherry Creek apartment must be suppressed as it was the product of an investigatory process tainted by the Illinois traffic stop and the illegal search of the Queen Avenue apartment. The court eventually found that Officer Donegan legally obtained consent from the manager to be on the Cherry Creek property and that Pointer had no constitutionally recognizable privacy interest in the community dumpster on that property into which he placed the trash bag. In addition, the court also found "the mere fact that the [Queen Avenue] search piqued the interest of the law enforcement authorities to do surveillance is not sufficient fruit of

the poisonous tree." The court also found that the discovery of Thomas's identity and her Cherry Creek address were the product of an independent investigation. The district court thus concluded, from all of these findings, that the results of the Cherry Creek surveillance and search were too attenuated from the Queen Avenue search to be suppressed. Pointer thereafter pleaded guilty to the two counts of conviction and reserved the right to appeal the district court's decision to deny the motions to suppress.

On appeal, Pointer sets forth ten separately denominated claims for review in his pro se brief. Claims One through Five, Eight, and Nine are all different challenges to the district court's core decision to deny the motions to suppress. Claims Six and Ten are allegations that the district court judge exhibited bias and prejudice toward Pointer in the conduct of the suppression hearing and in the adverse rulings. Finally, Pointer contends in Claim Seven that his conviction is the product of ineffective assistance of trial counsel.

The district court's decision to deny the motions to suppress will be affirmed. The exclusionary rule bars the admissibility at trial of physical evidence and testimony acquired by law enforcement officers through unconstitutional means. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The rule also applies to exclude evidence subsequently discovered and found to be derivative of those unconstitutional means, or the "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quoting *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). A court faced with evidence claimed to be "fruit of the poisonous tree" must decide if law enforcement officials obtained this evidence by exploiting the initial illegality or by sufficiently distinguishable methods. An important step in this process is an assessment by the finder of fact of the flagrancy (or conformity to constitutional norms) of the police conduct. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

■ In the case at bar, there is no dispute as to how the officers came to place Pointer under surveillance and, ultimately, discover the evidence sought to be excluded. Officer Donegan freely admitted that his knowledge (or assumed knowledge) of Pointer obtained from the Illinois police and the search of the Queen Avenue residence caused him to place the Queen Avenue address under surveillance. The officers thereafter conducted a lengthy surveillance of Pointer's Queen Avenue residence and, in the process, discovered Thomas's relationship to Pointer and her residence. The officers obtained permission from the manager of the Cherry Creek apartment complex to be on the premises and, having gained admission legally, patiently conducted another surveillance on the mere hope of confirming their suspicions about Pointer. Having discovered proof of Pointer's drug dealing, the officers did not knock down the door to Thomas's apartment. They, instead, proceeded to obtain a search warrant from a disinterested judge. In short, the district court properly found that the police conduct in this case was sufficiently attenuated from, and conformed to constitutional norms in all respects following, the Queen Avenue search. No evidence gathered in that illegal search was ever admitted against Pointer or used to further the investigation. Pointer's core theory, that the "but for" aspect of the investigation shielded him from investigation for the rest of his life, is simply not the law. *See, e.g., Wong Sun*, 371 U.S. at 487–88 (exam-

ining "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (citation and quotation marks omitted)).

 Claims Six and Ten are allegations that the district court judge exhibited bias and prejudice toward Pointer in the conduct of the suppression hearing and in the adverse rulings. An examination of Pointer's appellate arguments shows that the alleged judicial bias takes the exclusive form of adverse legal rulings. Judicial rulings alone almost never constitute a valid basis for a finding of judicial bias. *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

Finally, Pointer argues in Claim Seven that his conviction is the product of ineffective assistance of trial counsel. This court has long expressed a preference not to entertain ineffective assistance of counsel claims on direct appeal. *See, e.g., United States v. Brown,* 276 F.3d 211, 217 (6th Cir.2002). The appeal lacks merit.

Accordingly, all pending motions are denied and the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.